**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

CHRISTIE WIESEN,

                            Plaintiff,

           -vs-

GUARANTEED HOME MORTGAGE, INC.,

                            Defendant.

DECISION AND ORDER

14-CV-6649-CJS-JWF

**APPEARANCES**

For Plaintiff:                  Jon E. Bonavilla, Esq.
                                Culley, Marks, Tanenbaum & Pezzulo
                                36 West Main Street, Suite 500
                                Executive Office Building
                                Rochester, NY 14614-1790
                                (585) 546-7830

For Donald Yost:           Julie P. Apter, Esq.
                                Goldberg Segalla LLP
                                665 Main Street Suite 400
                                Buffalo, NY 14203
                                (716) 566-5400

**INTRODUCTION**

**Siragusa, J.** This employment discrimination case, brought pursuant to Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law, is before the Court on Defendant's motion seeking summary judgment. Motion for Summary Judgment, Jun. 1, 2016, ECF No. 16. For the reasons stated below, the application is denied.

**BACKGROUND**

The facts for the purpose of this motion are taken from the parties' statements filed pursuant to Loc. R. Civ. P. 56. Disputes are indicated below.

Defendant Guaranteed Home Mortgage, Inc. ("GMHC") was a mortgage investment and banking firm that provided residential and commercial mortgage financing to a wide variety of consumers and real estate professionals. The corporate offices were located in White Plains, New York. Plaintiff Christie Wiesen ("Wiesen"), a female, was hired in October 2001 as a mortgage loan originator at GMHC's branch office in Rochester, New York. As part of her employment, she attended mandatory harassment training and received a certificate of completion on February 9, 2012. A little less than a year later, on January 3, 2013, Wiesen was promoted to the position of Branch Manager of the Rochester branch.

Contrary to Wiesen's allegations in the complaint ¶ 9, GMHC contends that Marc Schwaber ("Schwaber"), based in White Plains, New York, was a sales manager for GHMC and has never been its chief executive officer. Wiesen denies GMHC's assertion in an affidavit in which she states the following with regard to Schwaber's position in GMHC:

> 4. In August 2012, GHMC fired my branch manager Joe Prioa, and my branch then began reporting to another manager in White Plains, John Albright.
>
> 5. However, beginning in October 2012, Albright had been fired and a new branch manager, Marc Schwaber, was brought in to manage the Rochester branch. He was my superior and supervisor, and I was required to report to him. At this time, I also spoke by phone to the owner of GHMC, David Wind, expressing my concern about the repeated change in managers for the branch. Mr. Wind specifically told me at that time that Schwaber was being brought in to manage the branch and that he would "really turn things around."

Wiesen Aff. ¶¶ 4–5, Aug. 15, 2016, ECF No. 19-5.

GHMC counters that any complaints against Schwaber by Wiesen would have been in her personnel file, and there are none. Apter Aff. ¶ 10, Jun. 1, 2016, ECF No.

16-1. Further, GHMC contends that "[t]he files that were provided to the EEOC demonstrated that GHMC terminated all of its Rochester, New York employees due to branch closure. The plaintiff was not terminated due to retaliation." *Id.* ¶ 13. In a letter addressed to the U.S. Equal Employment Opportunity Commission, and dated April 1, 2014, ECF No. 16-11 ("Letter to EEOC"), Julie P. Apter, Esq., responded to the question of who was the branch manager at the Rochester office. She wrote in pertinent part as follows:

> With respect to the information requested in number 1, please be advised that Guaranteed Home Mortgage Company did not maintain organization charts or descriptions for the branch offices. The branch manager would be the individual in charge of each location. With respect to this particular location, Joseph Proia was the branch manager until his termination on August 13, 2012. At that time, Guaranteed Home Mortgage Company was in the process of closing the branch because it was not profitable. However, Guaranteed Home Mortgage Company ended up keeping Christie Wiesen and another loan officer on board. Since it is required by the Nationwide Mortgage Licensing System and Registry to have a branch manager listed, the White Plains, New York branch manager, Andrew Abrams, was listed as an interim branch manager at that time. In addition, New York State requires a licensed mortgage loan officer to be set up as a branch manager. Therefore, John Cate was the regional manager and was overseeing the branch location although he was not a licensed loan officer. Therefore, the complainant, Christie Wiesen, ended up managing the location from the site and she was being considered to be placed as the official branch manager for that location if the location were going to remain open. Unfortunately, a decision was made to close the entire branch.
>
> The Rochester location closed in the summer of 2013 due to the fact that it was not profitable. Christie Wiesen and another individual were terminated in mid-July and then the two remaining loan officers were terminated at the beginning of August, 2013. One individual stayed on to work with the chief financial officer at that time to develop possible broker business. However, this officer did not report to that office location since they closed the branch.

Letter to EEOC ¶ 1.

**STANDARDS OF LAW**

*Summary Judgment Motion*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)), *cert. denied*, 517 U.S. 1190, 116 S. Ct. 1678, 134 L. Ed. 2d 780 (1996).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. Anderson, 477 U.S. at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom

summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1)(B). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

Of course, it is well settled that courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotations omitted).

### *Title VII*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.' 42 U.S.C. § 2000e-2(a)(1)." *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir. 1999).

### *New York Human Rights Law*

New York Executive Law § 296 provides in pertinent part as follows:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in

5

terms, conditions or privileges of employment.

N.Y. Exec. Law § 296(1) (McKinney's 2007). The Court notes that the elements of Title VII and New York Executive Law § 296 claims "can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII." *Gallagher v. Delaney*, 139 F.3d 338, 345 (2d Cir. 1998).

### *Hostile Work Environment*

The Second Circuit addressed the elements of a hostile work environment claim under Title VII in *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597 (2006) as follows:

> "When the workplace is permeated with discriminatory intimidation, ridicule, and insult [based on, *inter alia*, sex] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris [*v. Forklift Systems, Inc.*], 510 U.S. [17] at 21 (internal quotation marks and citations omitted); *see also Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002) (same). A jury must be able to conclude that the work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse. *Id.*; *see also Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).

*Schiano*, 445 F.3d at 604-05 (footnote omitted). As the Second Circuit observed in *Mass v. Equinox Fitness Club*, 354 Fed. Appx. 556, 557–58 (2d Cir. 2009):

> As a general rule, it is "axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his] sex." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *accord Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998)). To do so, a plaintiff must present, at a minimum, circumstantial evidence from which a discriminatory intent can be inferred. *See Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or

abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc*, 510 U.S. 17, 21 (1993).

*Retaliation*

In order to state a claim for retaliation, a plaintiff must plausibly allege that "(1) [Plaintiff] engaged in a protected activity; (2) the employer was aware of the protected activity; (3) the employer took adverse action; and (4) a causal connection exists between the protected activity and the adverse action." *Shah v. N.Y. State Dept. of Civil Service*, 341 Fed. Appx. 670, 673 (2d Cir. 2009).

*Burden Shifting Analysis*

All of the claims are subject to the *McDonnell Douglas* burden shifting analysis. As explained by the Second Circuit in a retaliation context:

> First, the plaintiff must establish a prima facie case…. of retaliation by showing: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Jute* [*v. Hamilton Sundstrand Corp.*], 420 F.3d [166] at 173 (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir.2001)). The plaintiff's burden in this regard is "de minimis," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* (internal quotation marks omitted).
>
> If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Id.* The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id.* A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions…[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

*Hicks v. Baines*, 593 F.3d 159, 164-165 (2d Cir. 2010). In a subsequent case, the Su-

preme Court clarified that a plaintiff making a retaliation claim pursuant to 42 U.S.C. § 2000e-3(a)[1] "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

**ANALYSIS**

Wiesen's complaint contains the following causes of action: (1) sexual discrimination by supervisory personnel in violation of Title VII and NYHRL; (2) failing to prevent, or tolerating sexual harassment sufficiently pervasive to alter employment conditions and physical conduct of a sexual nature in violation of Title VII and NYHRL; (3) Retaliation against Wiesen when she complained about sexual harassment; (4) a claim to punitive as well as compensatory damages; (5) assault; (6) negligence; (7) breach of employment contract; and (8) a claim of unjust enrichment.

Wiesen directly alleges that her harasser, Schwaber, was in a supervisory position over her as the branch manager. However, in a sworn declaration based on her personal knowledge, GHMC's counsel states that Schwaber was not Wiesen's supervisor, but was, instead, a sales manager in the White Plains office of the company. If Schwaber was a colleague on the same level as Wiesen, then the only way GHMC would be liable for any alleged sexual harassment by him would be if Wiesen complained to GHMC and GHMC took no action. As the Second Circuit wrote in *Petrosino v. Bell Atlantic*, 385 F.3d 210 (2d Cir. 2004):

> The Supreme Court has ruled that employers are not automatically liable for sexual harassment perpetrated by their employees. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S. Ct. 2275,

---

[1] "Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings."

8

> 141 L.Ed.2d 662 (1998).
>
> Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action. *See Faragher v. City of Boca Raton,* 524 U.S. at 789; *accord Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 72 (2d Cir. 2000). Where the harassment is attributed to a supervisor with immediate or successively higher authority over the employee, a court looks first to whether the supervisor's behavior "culminate[d] in a tangible employment action" against the employee, *Burlington Indus., Inc. v. Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; if it did, "the employer will, *ipso facto,* be vicariously liable," *Mack v. Otis Elevator Co.,* 326 F.3d at 124. In the absence of such tangible action, an employer will still be liable for a hostile work environment created by its supervisors unless it successfully establishes as an affirmative defense that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. at 765, 118 S. Ct. 2257; *accord Faragher v. City of Boca Raton,* 524 U.S. at 807, 118 S. Ct. 2275; *Mack v. Otis Elevator Co.,* 326 F.3d at 125.

*Petrosino*, 385 F.3d at 225.

Wiesen's complaint alleges that GHMC failed "to take proper remedial action when it learned of other incidents of this nature prior to the incidents involving the Plaintiff," and failed to "take proper precautions with respect to its[] employees/agents with known histories of sexual harassment or other improper behavior, and to protect other employees, including the Plaintiff, from the same…." Compl. ¶ 58. In an affidavit, Wiesen states that Schwaber was brought in to manage the Rochester branch and was her supervisor beginning in October 2012. She claims she spoke with the owner of GHMC, David Wind ("Wind"), by phone and expressed her "concern about the repeated change in managers for the branch." Weisen Aff. ¶ 5, Aug. 15, 2016, ECF No. 19-5. She alleges details of her encounters with Schweiber in October 2012, including sexual overtures

9

Schweiber made to her when she gave him a ride to his hotel in Rochester. *Id.* ¶ 6. She includes copies of what she states are text messages and Facebook® messages Schweiber sent to her that were sexually harassing. She also explained why she did not raise the issue to the owner of GHMC: "I was at a loss over what to do. I did not want to complain and lose my job or be demoted. I also know that Schwaber was the best friend of the owner of Defendant GHMC, David Wind." Weisen Aff. ¶ 8. She also asserts that Schwaber sent indiscrete images of himself to her and encouraged her to reciprocate. *Id.* ¶ 9. Weisen recounted that Schwaber told her that the company's IT department would be wiping his computer clean to remove all the explicit messages to her, and that Schwaber "'did it all the time.'" *Id.* ¶ 11. In addition to her own affidavit, Weisen's response contains a affidavits from fellow employees Joe Petralla and Rebecca L. Miller. Both confirm that Schwaber was the Rochester branch manager in October 2012, and that Weisen confided in him about the sexually explicit messages Schwaber sent to her.

In April 2013, Weisen states she informed Wind and the company's chief financial officer, Joe Cilento ("Cilento") about Schwaber's sexual harassment. At the time, Weisen was branch manager, and shortly after her complaint, Cilento arrived at the Rochester branch on May 2, 2013, and announced he was the branch manager now and Weisen was no longer in that position. *Id.* ¶ 13. In late May 2013, Weisen sent an email message to Wind, Cilento and Marie Gannon ("Gannon"), GHMC's human resources manager, "expressing [her] displeasure with the demotion and questioning why it had occurred after [she] had just told Wind about the sexual harassment with Schwaber." *Id.* ¶ 14. Weisen states she never received a response.

Weisen's affidavit raises a question of fact about whether Schwaber was a supervisor, or a peer. If the former, then liability can be implicated to the company. If the latter, then Schwaber has alleged sufficient facts to show that she availed herself of the reporting provisions in the company handbook for sexual harassment and received no response. Further, she has alleged sufficient facts to show retaliation by GMHC for having engaged in a protected act: reporting the sexual harassment by Schwaber. Further, on the question of her contract and the alternative claim for unjust enrichment, Weisen's affidavit establishes sufficient facts to withstand summary judgment.

## CONCLUSION

Defendant GHMC has failed to establish an absence of a material fact. Consequently, summary judgment is precluded. Therefore, Defendant's motion for summary judgment, ECF No. 16, is denied.

IT IS SO ORDERED

Dated:   January 12, 2017
         Rochester, New York

                    ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge